# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CARITA J. PIERCE,            :
                                       :
             Plaintiff,         :
                                       :
      v.                    :       CIVIL ACTION NO.
                                       :       1:07-CV-0592-JOF
ALLSTATE INSURANCE     :
COMPANY,                   :
                                       :
            Defendant.      :

## OPINION AND ORDER

This matter is before the court on Defendant Allstate Insurance Company's Motion for Partial Summary Judgment [9] and Cross Motion for Summary Judgment [43] and pro se Plaintiff Carita Pierce's Motion to Compel Settlement [13], Amended Motion for Judgment [19], and Motion for Summary Judgment [30].

## I.    Background

This lawsuit arose out of Plaintiff's insurance claim for a fire loss that occurred on January 4, 2007, at 9:45 a.m. at Plaintiff's home in Kennesaw, Georgia. (Cobb County Fire Report [12-2], at Ex. D). Plaintiff purchased a Homeowner's Policy from Defendant on October 19, 2006. (Application [17-3], at Def. Ex. 3); (Policy [22-5], at Ex. A-4). Plaintiff notified her Allstate agent of the fire on the morning that it occurred and initiated a claim.

Allstate began to investigate the cause of the fire and resulting damages and sent an adjuster to assess the damage on January 8, 2007. (Willis Aff. [22-3], at 1).

Plaintiff was not pleased with the progression of her claim, and on January 9, 2007, she hired a public adjuster, Randy Campbell of Brasher, Campbell & Honnold, to adjust her claim. (Campbell Agreement [17-3], at Def. Ex. 7). Plaintiff also filed a complaint with the Insurance Commissioner's Office on January 9, 2007, because she felt that Allstate had acted inappropriately on January 8 by refusing to pay her "fair rental value to maintain a normal standard of living" or allow her to use her own vendors for repairs. (Letters to and from Insurance Commissioner [12-2], at Ex. A). On January 15, 2007, Allstate responded to the Insurance Commissioner and stated that it had assigned three individuals to Plaintiff's claim to "address the entire loss and work to a quick and fair conclusion." (*Id.*) On January 12, 2007, Allstate sent Plaintiff via certified mail an advance check for $2,500 along with an Advance Payment Agreement which she signed on January 17, 2007. (Advance Letter [17-3], at Def. Ex. 4) (Willis Aff. [22-3], at Ex. A-1).

On January 22, 2007, Allstate sent a letter to Mr. Campbell, requesting that Plaintiff complete and sign a Proof Of Loss Form as well as Personal Property Inventory Worksheets, pursuant to the policy, within sixty days of the loss. (Campbell Letter [17-3], at Def. Ex. 5). The letter informed Plaintiff of her obligations under her policy, stated that her failure to comply with the terms and conditions of her policy would be considered a material breach

2

of contract, and explained that Allstate was not waiving its rights under the policy. (*Id.*). Plaintiff claims she never received this Proof of Loss. (P. Depo. [17-2], at 146). On January 29, 2007, Mr. Campbell sent a fax to Allstate adjuster, Dorothy Brown-Jackson, enclosing a copy of a letter and receipts that Mr. Campbell claimed that he and Plaintiff had faxed to Allstate on January 18, 2007, requesting more than $5,000 in living expenses and requesting a $5,000 advance to procure temporary housing. (Brown Fax [19-2], at Ex. L). Mr. Campbell's letter stated that to date the Pierces had received nothing relating to their January 18 and January 24 requests. (*Id.*).

On February 9, 2007, Plaintiff wrote a letter to the President of Allstate Insurance Company and informed Allstate that it had "reviewed the details regarding [her] claim, [on January 15, 2007] and recognized the liability to pay the claim" and if it did not make payment on all portions of her claim within twenty-four (24) hours, that it would constitute a denial of her claim by Allstate and that she would file suit for the principal amount of the claim, including attorneys' fees and an additional fifty percent (50%) of the claim for denial or delay of payment. (Wilson Letter [17-3], at Ex. B). Plaintiff also appears to have sent another letter to the Allstate President on February 9 which informed him that she was no longer being represented by Mr. Campbell and that Allstate should forward all contacts regarding her claim through her. (Wilson Letter II [17-3], at Def. Ex. 6). Throughout the

3

time that these communications were sent, Allstate was in the process of attempting to investigate Plaintiff's loss. (Willis Aff. [22-2], at 2).

Plaintiff filed a pro se insurance action in Fulton County, Georgia, on February 14, 2007, which Defendant removed on March 13, 2007. Plaintiff demanded more than $400,000 [1]. Defendant answered on March 13, 2007 [2], and following the parties' initial disclosures, filed for partial summary judgment on August 31, 2007 [9]. Defendant's motion argued that Plaintiff's claim for fifty percent bad faith penalties and attorneys' fees should be dismissed as a matter of law because Plaintiff failed to make a timely or proper demand for payment pursuant to O.C.G.A. § 33-4-6 (2007).[1] Plaintiff responded to Defendant's motion for partial summary judgment on September 24, 2007, and conceded Defendant's arguments. Therefore, the court GRANTS Defendant's motion for partial summary judgment [9].

On September 25, 2007, Plaintiff's then-attorney Joel Grist wrote to Defendant's counsel requesting a Proof of Loss form for Plaintiff to complete. (Grist Letter [28], at Ex. X). Defendant's counsel provided that Proof of Loss to both Plaintiff and Plaintiff's counsel

---

[1]Section (a) of this provision states in part:
In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

4

on September 28, 2007. (Zschunke Aff. [37-2], at E-1). On September 27, 2007, Plaintiff

filed a motion to compel settlement [13]. Plaintiff stated that discovery had been completed

and that she wished to pursue settlement as a means of disposing of her case within thirty

days. Defendant has rejected Plaintiff's offers of settlement. The court finds that this matter

is not appropriate for settlement and DENIES Plaintiff's motion [13]. For the reasons which

appear below, there is no reason to suppose that the insurer ought, in good conscience, to

pay Plaintiff anything.

On October 19, 2007, Plaintiff filed an Amended Motion for Judgment [19]. Plaintiff

attached additional documentation to this pleading, added facts about her communications

with Allstate and her damages, and moved for relief on new grounds. Specifically, Plaintiff

reasserted her claim for a 50% penalty and attorneys' fees; accused Allstate of one count of

breach of implied contract of homeowner's coverage; one count of breach of implied

covenant of good faith and fair dealing; one count of intentional infliction of emotional

distress for which she demanded $1,000,000 in damages; and one count of defamation of

character for which she demanded an additional $1,000,000 in damages; and moved for

punitive damages in the amount of $1,638,857.08. The court will construe this motion as

an amended complaint.

Plaintiff filed an official Motion for Summary Judgment on January 7, 2008 [30].

On January 30, 2008, Defendant responded to Plaintiff's motion and filed a cross motion for

summary judgment [43]. The parties have fully briefed all motions before the court.

## II.     Contentions

Defendant contends that Plaintiff is entitled to no recovery in this action because (1)

her signed application for coverage to Allstate was fraudulent and contained material

misrepresentations; (2) she breached the terms of her homeowner's policy and thwarted

Allstate's effort to investigate and adjust her fire loss claim by failing to file a proof of loss

form and filing the present action just forty-one days after the underlying fire loss occurred;

and (3) Allstate can establish that Plaintiff misrepresented material facts to Allstate as part

of her demand for payment under the Policy of Insurance. Defendant insists that it did not

waive its rights under Plaintiff's insurance policy during its dealings with Plaintiff by

admitting liability. Defendant asserts that Plaintiff's claim is at best a breach of contract

action and that her claims for defamation, intentional infliction of emotional distress, etc.,

are both legally invalid and absent from her original complaint. Defendant goes on to

dispute Plaintiff's calculation of her damages and Plaintiff's assertion of an "implied

contract" and argues that there is no claim for breach of implied covenant of good faith and

fair dealing under Georgia law for a party claiming recovery under an insurance contract.

Plaintiff's primary argument appears to be that Defendant has waived its right to require her to follow certain aspects of the policy such as notice and proof.  Plaintiff insists that Defendant generally waived its right to enforce its policy requirements by admitting liability on the following occasions:  (1) in its letter to the Insurance Commissioner Allstate said it would assist with additional living expenses,[2] (2) when Allstate adjuster Dorothy Brown-Jackson told Plaintiff that she would receive a reimbursement check for her furniture and housing rental,[3] (3) when Allstate employee Brent Williams told her that her house

---

[2]Plaintiff relies on the portion of this letter which states:
The claim has been assigned to three adjusters who will address the entire loss and work to a quick and fair conclusion.  Mr. Ron Langley will handle the structure portion of the loss.  Ms. Gwen Overstreet has been assigned to handle the contents portion and *Scott Coleman will assist Ms. Pierce with her Additional Living Expenses*.
(Commissioner Letter [17-3], at Ex. A) (emphasis added).

[3]Plaintiff relies on the following portions of her call with Dorothy Brown Jackson:
Carita Pierce -  . . . I wanted to [j]ust verify one more time with you on when should I be receiving reimbursement   Uh-on the ALE additional living expenses.
Dorothy Brown Jackson - Yeah, when we had talked yesterday I had said that I was working on it and that I would call you back and go over the figures with you.
Carita Pierce - Okay.
Dorothy Brown Jackson - Before I mail it tomorrow.
Carita Pierce - Okay.
Dorothy Brown Jackson - It's going in the mail tomorrow.
(Brown Tr. [13-1], at Ex. G).

7

would be repaired in three or four weeks,[4]  (4) when Allstate's counsel Bill Zschunke told Plaintiff on October 24, 2007, that he would send a contractor over to get a repair estimate,[5] and (5) when Rick Taylor told Plaintiff they "owed her."[6]  Plaintiff further claims that Defendant waived its right to proof of loss by refusing to respond to her attorney's letter of September 25, 2007, and furnish her with a proof of loss form.  Plaintiff primarily relies on mistake and good faith to rebut Defendant's assertions of misrepresentation, and she also accuses Defendant of tampering with evidence.

---

[4]Plaintiff relies on the following portion of her call with Brent Williams:
Brent Williams - I did get the estimates that he sent to me and I have been reviewing it.
Carita Pierce - Okay- so how soon do you think we'll be able to come up with a settlement on the Uh- estimates I just want to have a time period cause it's like the seventh, week now.
Brent Williams - Uh-- I would say it will probably be three or four weeks.
(Williams Tr. [13-2], at Ex. F).

[5]Plaintiff relies on the following answering machine message sent October 24, 2007:
Uh I'm just following up with what we talked about a week ago.  Uh give me a call Uh I want to send a contractor over to get an repair estimate.  Uh to repair the fire damage that was done to the house, and uh you mentioned that you have to let him in, and I need to let him in so.  If you could call me back and tell me when you are available next week.  I can Uh call this contractor up and tell him to be there when you are available so . . . .
(Zschunke Tr. [20], and Ex. S).

[6]Plaintiff appears to rely on two statements:  "I need to send emails, because we owe you" and "Okay, then we owe you fair rental value."  (Taylor Tr. [12-2], at Ex. E).

AO 72A
(Rev.8/82)

## III.   Discussion

There are four issues before the court:   (1) whether Plaintiff made material misrepresentations in her insurance application which bar recovery, (2) whether Plaintiff breached her agreement with Allstate for coverage by refusing to submit a proof of loss form and by prematurely filing suit, (3) whether Plaintiff made material misrepresentations in her insurance claim which bar recovery; and (4) whether Plaintiff may amend her claim to add defamation, implied contract, and emotional distress claims.  Given the extraordinary facts revealed to the court in the record and the fact that Defendant has essentially accused Plaintiff of fraud, the court will address issues one and three first.

### A.   Material Misrepresentations in Insurance Application

Under Georgia law, an insurer may deny coverage to an insured where the insured has made a misrepresentation, omission, concealment of facts, or incorrect statement in his or her application for insurance which is fraudulent or material either to the acceptance of the risk or to the hazard assumed by the insurer.  *See* O.C.G.A. § 33-24-7 (2007); *Nappier v. Allstate Ins. Co.*, 961 F.2d 168 (11th Cir. 1992).  A misrepresentation is material under section 33-24-7(b)(2) if it would influence a prudent insurer in deciding whether to assume the risk of providing coverage.  *Nappier*, 961 F.2d at 170 (11th Cir. 1992).  The insured need not have knowledge of the falsity or act in bad faith for the insurer to deny coverage as long as the misrepresentation is material.  *Id.*  "Materiality is a mixed question of law and fact

9

that can be decided as a matter of law if reasonable minds could not differ on the question."

*Woods v. Independent Fire Ins. Co.*, 749 F.2d 1493, 1496 (11th Cir. 1985).

Here, Plaintiff's Allstate policy explicitly states above Plaintiff's signature:

> To the best of my knowledge the statements made on this application, including any attachments are true. I request the Company, in reliance on these statements, to issue the insurance applied for. The Company may recompute the premium shown if the statements made herein are not true. In the event of any misrepresentation or concealment made by me or with my knowledge in connection with this application, the Company may deem this binder and any policy issued pursuant to this application, void from its inception. This means that the Company will not be liable for any claims or damages which would otherwise be covered. I have read this entire application, including binder provision before signing.

(Application [17-3], at Def. Ex. 3). Despite this warning, the record indicates that Plaintiff made multiple misrepresentations on her application for insurance. Plaintiff's application states that (1) she purchased and moved into the insured residence in October 2006; (2) she was single at the time; (3) she was the only "owner" and adult occupant of the household and there were no children occupants; (4) she purchased the home for $242,000; (5) she had filed no prior claims for loss; and (6) she had never had an insurance policy cancelled or non-renewed. (Application [17-3], at Def. Ex. 3).

The record reveals, however, that Plaintiff was not single; she had married Jacob Henry in August of 2003; and the couple was living as man and wife with their daughter in October 2006. (Marriage Cert. [17-3], at Def. Ex. 8); (P. Depo. [17-1], at 102, 107-108). The record also reveals very different circumstances surrounding the purchase of the house

10

on Cool Springs Drive. In her deposition in the instant case, Plaintiff admitted that it was her husband and not she who purchased the house and that the house was purchased for $198,000 in August 2005 rather than for $242,000 in October 2006. (P. Depo. [17-1], at 81-83). Likewise it appears that Plaintiff was not an "owner" and did not participate in her husband's purchase of the home. Plaintiff testified under oath in a prior insurance matter that she was not on the title to the Cool Springs Drive house, and her husband had purchased it for her as a surprise. (GFB Filing [26-3], at Ex. B, pg. 23).[7] The proof of loss in that claim also states that Jacob Henry is the "owner" of the property and that "[n]o other person or persons had any interest [in the insured property on Cool Springs Drive] or encumbrances thereon." (GFB Filing [26-3], at 41).

Most importantly, the record reveals that the Henry/Pierces have filed two prior homeowner's insurance claims with Great Farm Bureau Mutual Insurance Company

---

[7]In this action, Plaintiff and Defendant have engaged in a dispute about the title to the home. Plaintiff's insurance application says that Plaintiff is living in the home as "owner." Defendant alleged that Plaintiff misrepresented that she was the "owner" of the home. Plaintiff submitted a warranty deed which deeds the home to Jacob Henry but includes Plaintiff's signature at the bottom along with Mr. Henry's. (Warranty Deed [28], at Ex. U). In her pleadings in this matter, Plaintiff has contended that she is an "owner" because she signed the deed. Defendant submitted other deed documentation which it contends are certified residential real estate records obtained from Cobb County Superior Court which show Jacob L. Henry, marital status single, as the owner of the house, but the copy quality of this documentation makes it unreadable. (Willis Aff. [22-3], at Ex. A, A-3). Given Plaintiff's plain statement under oath in a prior proceeding that she is not on the title to her home and the proof of loss for that incident stating the same, the court need not investigate the parties' factual dispute about the real estate records on the Cool Springs house.

11

("GFB"), and as a result of these claims GFB cancelled their policy in October 2006. In her deposition in the instant matter, Plaintiff admitted that sometime in or around March 2006 the house on Cool Springs Drive was burglarized. (P. Depo. [17-2], at 95-96). She testified that her husband's musical equipment was taken; he filed a claim with GFB; she was not involved in the claim; and her husband got $2500. (*Id.*, at 96-98). Following this deposition, Allstate subpoenaed GFB for all documents relating to this burglary. GFB submitted a deposition taken of Plaintiff on August 30, 2006, a loss inventory including numerous personal items including women's jewelry, a claim loss form for more than $100,000 dollars, and a claim release of $26,837.84. (GFB Filing [26-3], at Ex. B).

The documents subpoenaed from GFB also revealed a certified incident report from the Cobb County Fire Department which states that there was fire incident at the home of Jacob Henry on Cool Springs Drive on November 26, 2005, involving a Christmas tree fire. (*Id.*, at Ex. A). Jacob Henry filed a claim as a result of this fire and received a $75,000 settlement from GFB. (*Id.*). The GFB documents also revealed that GFB had cancelled Jacob Henry's policy on the Cool Springs Drive property on October 16, 2006, and the cancellation was to go into effect on November 16, 2006. (Cancellation Notice [38-2], at 1). These documents contradict Plaintiff's deposition testimony regarding her prior insurance claims and her reason for changing insurers. (P. Depo. [17-2], at pgs. 104-05).

AO 72A
(Rev.8/82)

The court finds that as a matter of law, Plaintiff's misrepresentations about the ownership and the occupancy of the insured home are material under O.C.G.A. 33-24-7(b)(2) . *Woods*, 749 F.2d at 1497 (finding a man's misrepresentation about who had title and interest in a home to be material as a matter of law); *Barnum v. Sentry Ins.*, 160 Ga. App. 213, 215 (1981) (implying that it is a material misrepresentation to conceal true facts about a residence's occupancy, title, and interest). Plaintiff represented that she was the only owner of the home and that she lived there alone when in fact the home contained three residents and Plaintiff had a half, if any, interest in the home.

In *Woods*, an insured misrepresented that he was the owner of the house in which he resided when in actuality he had conveyed the property to his mother in fee simple to prevent his wife from making a claim against it in a divorce proceeding. 749 F.2d at 1494. The insured conceded that the representation was false but contended that the materiality of the misrepresentation was a question for the jury that could not be decided on summary judgment. *Id.* at 1496. The Eleventh Circuit disagreed and stated:

> Reasonable minds cannot differ on the materiality of the misrepresentation made here because it went to the core factor of insurable interest, which is not a mere nicety or a matter of administrative convenience. Insurable interest is a keystone of the concept of insurance, safeguarding the insurer against the risk that arises if one who will receive the monetary benefit from loss of the insured property (or life, as it may be) has no interest in the property not being destroyed. Woods's misrepresentation concealed from the insurer the existence of a possible defense of lack of insurable interest.

*Id.* Plaintiff's misrepresentation about sole ownership was material as a matter of law.

13

Plaintiff's misrepresentation about her prior claims of loss was likewise material. Under the heading "5 Year Loss History (including losses at present and prior residences)" on Plaintiff's Allstate application, Plaintiff wrote nothing. (Application [17-3], at D. Ex. 3). Yet, the record reveals that the Henry/Pierces had filed not one but two prior loss claims on the property and had received substantial settlements. The Georgia Court of Appeals addressed a similar scenario in *Brannon v. Allstate Ins. Co.*, 120 Ga. App. 467 (1969). There, the insurer asked the applicant for insurance if he had any prior fire, wind, hail, theft, or water losses and the applicant answered "none." *Id.* at 468. The insurer wrote this information down on the application, and the applicant signed it without reading it. *Id.* at 467. In actuality, the applicant had one, or perhaps two, prior fire loses. *Id.* The Georgia Court of Appeals determined that the evidence presented prevented a recovery by the insured under the policy. *Id.* at 468.

Assuming *arguendo* that Plaintiff's misrepresentations and concealment were not material to the acceptance of risk or the hazard assumed by the insured "as a matter of law," Plaintiff's claim would still be barred as a matter of law under O.C.G.A. § 33-4-7(b)(3).[8]

_____

[8]Section 33-24-7(b)(3) states:
(b) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
    . . . .
    (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the

14

Defendant has submitted an affidavit from Steve Campbell, a Financial Risk Consultant for Allstate, and Mr. Campbell has testified had Plaintiff truthfully answered the questions on her application, Allstate would not have agreed to insure the Cool Springs Drive property. (Campbell Aff. [39-2], at Ex. F).

Plaintiff claims that she did not intentionally misstate facts on her application to Allstate, and that she just failed to read and check over the incorrect information the insurance agent inputted before signing the application. Plaintiff maintains that she answered no to the question of loss because it was her husband and not she who filed the earlier burglary claim. The court need not determine whether Plaintiff's assertions are true or false or whether her mistakes were made in good faith because as a matter of law, Plaintiff's good faith with regard to *material* misrepresentations is irrelevant. Plaintiff has also attempted to defend her misrepresentations by accusing Defendant of tampering with evidence; she contends that the insurance application submitted by Defendant is not her actual application and pages 1, 2, 3, and 5 have been switched [27]. Plaintiff has not submitted an alternate application and Defendant has submitted a sworn affidavit by Steve Compton, the insurance agent who issued Plaintiff's policy, which states that he correctly recorded the information Plaintiff provided him on her application and that he faxed this application to her and received her approval of it. (Compton Aff. [39-2], at Ex. G). This

true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

affidavit along with Plaintiff's inconsistent deposition testimony make such accusations of evidence tampering highly unlikely. Furthermore, Plaintiff identified the application in her deposition as her own. (P. Depo. [17-2], at pg. 107).

For all the foregoing reasons, the court finds that Plaintiff has made material misrepresentations in her insurance application and thus cannot recover under her policy with Defendant.

### B.    Material Misrepresentations in Claims

Although it is clear that Plaintiff's application misrepresentations are sufficient to void her policy, the court will also address the additional ground that Plaintiff has misrepresented and concealed facts in making her claim. Plaintiff's policy states: "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Application [17-3], at Def. Ex. 3). To

16

support her insurance claim, Plaintiff submitted hotel receipts,[9] and a lease agreement[10] to indicate the amount of money she paid for temporary housing, a rental agreement to indicate the amount of money she paid for temporary furnishings,[11] and a property inventory to indicate the value of her belongings lost in the fire.[12]

Allstate employee Carol Willis investigated the legitimacy of Plaintiff's hotel receipts by going to each hotel and talking with hotel personnel. (Willis Aff. [22-3], at 4). Willis

---

[9]The record contains (1) a receipt from Marriott Hotel and Resorts for January 4-7 which shows a rate of $239 a night, $47.80 each day in credits and four cash payments of $191.20, (2) a receipt from the Hyatt on Windy Hill Road for January 15-22 for eight cash payments of $227.43 which lists $175.00 as the rate, (3) a receipt from Drury Hotels on Powers Ferry Place from January 23-30 which lists eight cash payments of $137.69 and shows a daily rate of $129.99 and occupancy of two guests, (4) a Days Inn Delk Road receipt for three cash payments of $76.99 which shows a daily rate of $69.99 and $7.00 a day in taxes, (5) three Hampton Inn Circle 75 Parkway receipts in the name of Jacob Henry for the nights of January 12-14 which show cash payments of $112.86 and list a room rate of $99.00 and an occupancy of one adult, an (6) an Amerisuites Atlanta Airport receipt for the night of January 11 which shows a rate of $129.00 and a cash payment of $141.90. (Receipts [17-3], at Def. Ex. 2).

[10]The record contains a Residential Lease/Rental Agreement between landlord, Leonard Henry and Tenant Carita Pierce for a property at 2850 Seagrave Way Kennesaw, Georgia beginning February 1, 2007 for the sum of $2,500 a month. (Lease [17-3], at Def. Ex. 10). The lease provides for a $2,500 non-refundable deposit and states that the premise shall not be occupied by any person other that those designated above as Tenant. (*Id.*). The lease in the record is not signed. (*Id.*).

[11]The record contains receipts for three weeks during March 2007 issued to Jacob Henry with an address listed of 22 Princeton Ave., Adairsville, Georgia 30103. (Rent-A-Center [17-3], at Def. Ex. 13).

[12]Plaintiff created her own homemade inventory form and provided no documentation to support its entries. (Inventory [17-3], at Def. Ex. 11); (P. Depo. [17-2], at pg. 150).

17

submitted a sworn affidavit that she discovered the hotel receipts were not legitimate and that Plaintiff did not stay in the said hotels for the listed rates and dates. (*Id.*). Allstate also submitted the sworn affidavit of Marriott Hotels employee Montreal Jenkins, who stated that Marriott computers indicated that neither Plaintiff nor her husband had stayed at the Marriott on the day her receipt specified and that her receipt was not in a valid format. (Jenkins Aff. [22-6], at Ex. B). Another Allstate employee, Dorothy Brown, submitted a sworn affidavit that the Accounting Department for Hyatt Hotel said that Plaintiff's Hyatt receipt had not been generated from their facility. (Brown Aff. [22-7], at Ex. C). Plaintiff admitted in her deposition that some of these receipts showed prices higher than those which she actually paid and that in one case she submitted a quote for a hotel she did not stay in. (P. Depo. [17-1], at 27-39). Plaintiff claims that the numbers on the receipts were the result of hotel mistakes. *Id.*

Allstate also investigated Plaintiff's lease agreement and found that (1) the purported landlord, Leonard Henry, could not be located by name, zip code, or telephone search; (2) the tax identification number provided to Allstate by a man claiming to be Leonard Henry, reached at a number provided by Plaintiff, was actually the social security number of a man named Jacob Henry of 14 Station Court, Adairsville, Georgia 30103; (3) Plaintiff was also listed at the Station Court address;[13] (4) the resident of 2850 Seagrave Way, the address on

_____

[13]The record contains a March 1, 2007 Residential Lease Agreement between Lessor Sedrick Williams and Lessee Carita Pierce for 14 Station Ct., Adairsville, Georgia 30103.

18

the lease agreement, has been a woman by the name of Elizabeth Pagano since March 17, 2006, and there was no mention of anyone known as Leonard Henry at this address; (5) no information could be located about Leonard Henry's purported business, Spotlight Group; and (6) the man identifying himself as Leonard Henry appeared very upset by Allstate's request for tax information, which Allstate needed in order to issue him a check. (Brown Aff. [22-7], at Ex. C). After Allstate advised Plaintiff about the information provided by "Mr. Henry," Plaintiff decided to have Allstate call Temporary Accommodations to find her an apartment. (Brown Aff. [22-7], at Ex. C). According to Allstate, Plaintiff did not want to provide any personal information to Temporary Accommodations. (*Id.*).

It appears that the lease submitted by Plaintiff was fraudulent. Plaintiff claimed in her deposition that she met Mr. Henry on the property; Mr. Henry was a real estate officer; and he was a white man not related to her husband. (P. Depo. [17-2], at 149-50). However, Plaintiff gave testimony in a her prior GFB deposition that Jacob Henry and Leonard Henry are the same person and Leonard is her husband's middle name. (GFB Filing [26-3], at Ex. B). The GFB record also contained a Marriott hotel receipt which Jacob Henry submitted with his theft claim which lists his name as Leonard Henry. (*Id.*, at pg 48).

Likewise, Defendant expressed concern about and investigated the amounts listed on Plaintiff's homemade property inventory. It is unclear whether this inventory was

_____

(Williams Lease [17-3], at Def. Ex. 12).

19

completely fraudulent like Plaintiff's other documents; however, Plaintiff has provided no receipts or other documentation to support the amounts in her inventory and she has admitted in deposition that some of them are unduly large.[14] (P. Depo. [17-2], at 192, 204-207); (Willis Aff. [22-3], at 8). Further, Plaintiff testified throughout her deposition that her husband had purchased the majority of the items on her inventory via credit card. Yet, Plaintiff submitted no credit card receipts and did not ask her husband how much he paid before estimating an amount for various items.

The court finds that the amount of money Plaintiff paid for temporary housing is material to the question of how much Defendant need pay her for living expenses as a result of the fire and the value of the goods in her home material to the question of how much Defendant need reimburse her for loss. The court finds the evidence sufficient to prove that Plaintiff has misrepresented or concealed information about these amounts. On this basis Plaintiff cannot recover under her policy with Defendant. The court has found sufficient evidence of two independent grounds that would preclude Plaintiff from recovering under her insurance policy with Defendant. Therefore, Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED.

---

[14]Plaintiff's inventory shows places where she scratched out amounts during her deposition and replaced them with the correct amount. (Inventory [17-3], at Def. Ex. 11). Some of these changes were very significant. For example, Plaintiff marked out $7,000 for dress shirts and wrote in $565.00, $2000 for jeans and wrote in $500, $3000 for dresses and wrote in $780, and marked out $900 in jewelry completely. (*Id.*).

AO 72A
(Rev.8/82)

### C.    Other Matters

Given the overwhelming factual evidence of misrepresentation by Plaintiff both before and after the filing of her claim, the court need not address Defendant's third ground, that Plaintiff cannot recover under her insurance policy because she has breached her agreement with Defendant for coverage by prematurely filing a lawsuit and failing to submit a required proof of loss form or Plaintiff waiver argument in response.  Likewise, the court need not extensively address whether Plaintiff may amend her complaint.

Pursuant to Fed. R. Civ. P. 15(a), after an answer is filed, a plaintiff may amend the complaint only by leave of the court.  The decision whether to grant or deny leave is within the sound discretion of the district court.  *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir. 1988).  Leave to amend "shall be freely given when justice so requires"; however, a court need not allow a plaintiff to amend when the plaintiff has acted with undue delay, in bad faith, or with dilatory motive or if the amendment would be futile or unduly prejudice the opposing party.  *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984).  Given the court's holdings above, the court DENIES Plaintiff's Amended Motion [19].

## IV.    Conclusion

Defendant's Motion for Partial Summary Judgment is GRANTED [9].

Plaintiff's Motion to Compel Settlement is DENIED [13].

Plaintiff's Motion for Amended Judgment is DENIED [19].

AO 72A
(Rev.8/82)

Plaintiff's Motion for Summary Judgment [30] is DENIED, Defendant's Cross Motion for Summary Judgment [43] is GRANTED, and all of Plaintiff's claims against Defendant are DISMISSED with prejudice.

**IT IS SO ORDERED** this 19th day of September 2008.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)